## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ANDREW PADILLA,

        Plaintiff,

      vs.                              Civ. No. 11-1028 JCH/KBM

AMERICAN FEDERATION OF STATE,
COUNTY, AND MUNICIPAL EMPLOYEES —
COUNCIL 18,

        Defendant.


### MEMORANDUM OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment:  **(1)** *Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment* [Doc. No. 26, filed June 11, 2012]; *Defendant's Response to Motion for Summary Judgment* [Doc. No. 27, filed June 25, 2012]; and *Plaintiff's Reply to Defendant's Response to Plaintiff's Motion for Partial Summary Judgment* [Doc. No. 29, filed July 9, 2012]; and **(2)** *Defendant's Motion for Summary Judgment* [Doc. No. 28, filed June 29, 2012]; *Plaintiff's Response to Defendant's Motion for Summary Judgment* [Doc. No. 31, filed July 13, 2012]; and *Defendant's Reply on its Motion for Summary Judgment* [Doc. No. 34, filed August 10, 2012].  The Court has reviewed the parties' filings and the relevant law.

The Court concludes that, as a matter of law, Plaintiff was not an "employee" of Council 18 but a volunteer.  Plaintiff therefore cannot prevail on his claim for overtime compensation. The Court denies Plaintiff's motion for partial summary judgment and grants Defendant's cross-motion for summary judgment.

## BACKGROUND

Defendant is the American Federation of State, County, and Municipal Employees, Council 18 (AFSCME)—a non-profit, state-wide labor organization representing employees in the New Mexico public sector.  [Doc. No. 27, p. 7]  Plaintiff Padilla was elected and served as President of Council 18 for about three years, in 2007 to 2011.  [Doc. No. 26, p. 2; Doc. No. 26, UMF #1; Doc. No. 27, p. 7]  While serving as President of Council 18, Plaintiff held a full-time job working for the Bernalillo County Water Utility Authority.  [Doc. No. 26, UMF #3]

Council 18 states, and Plaintiff does not dispute, that Plaintiff "was not relieved of his duties as AFSCME Council 18 President" by Defendant (Council 18)—but "was expelled from AFSCME Council 18 by AFSCME International, as a result of an AFSCME International Judicial Panel Case in which he was charged and found guilty of violating the International Constitution."  [Doc. No. 27, p. 7; Doc. No. 27-1, p. 2; Doc. No. 27-1, p. 13]  The AFSCME International panel found that Plaintiff requested and received "lost time payments" for time when he did not take uncompensated leave from his full-time job, and as a result expelled Plaintiff from the union on September 26, 2011, for "misappropriation and misuse of union funds"; Plaintiff was ordered to make restitution to AFSCME in the amount of $29,284.32. [Doc. No. 27, pp. 4-5; Doc. No. 27-1, pp. 5-13]

Plaintiff filed suit against the local AFSCME union, Council 18, claiming that he is entitled to overtime compensation at one and one-half times his hourly rate of $25.04.  [Doc. No. 1]  Plaintiff's first claim for relief—including claims for back pay; liquidated, exemplary, and other damages; interest; attorneys' fees and costs—is made under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-219 (FLSA).  Plaintiff's second claim for relief—for unpaid or underpaid wages, plus an amount equal to twice any unpaid or underpaid wages; interest;

attorneys' fees and costs—is made under the New Mexico "Minimum Wage Act," NMSA 1978, §§ 50-4-19 to -30 (2009) (NMMWA).  *See* 28 U.S.C. § 1367(a) (supplemental jurisdiction over state law claims forming part of same case or controversy).

## LEGAL STANDARDS

A party is entitled to summary judgment upon the party's showing that "there is no genuine dispute as to any material fact" and the party is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court must view the evidence and make inferences in the light most favorable to the non-movant.  *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010). "[I]f an inference can be deduced from the facts whereby the non-movant might recover, summary judgment is inappropriate."  *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984).  If different ultimate inferences may be drawn, "the case is not one for summary judgment," even if the court believes that the movant is more likely to prevail at trial; in ruling on a summary judgment motion, the court does not weigh the evidence, assess its probative value, or decide factual issues.  *Id.* at 1411-12.

The party moving for summary judgment bears the initial burden of proving that there is no genuine dispute on a material fact.  *Nahno-Lopez*, 625 F.3d at 1283.  The opposing party cannot rely on allegations in the pleadings, but must show that there is a genuine issue for trial by citing facts supported by competent evidence.  *Id.*; Fed. R. Civ. P. 56(c)(1).  "Conclusory legal statements" by the opposing party are insufficient in response to a motion for summary judgment.  *Nahno-Lopez*, 625 F.3d at 1284.  In determining whether the non-movant has raised a genuine dispute on a material fact, the court takes into account the substantive burden of proof at trial.  *Nahno-Lopez*, 625 F.3d at 1283.  The non-movant "must produce sufficient evidence for a reasonable trier of fact to find in its favor at trial."  *Id.*

## DISCUSSION

**I.  The Fair Labor Standards Act (FLSA)**

The determinative issue in this case is whether Plaintiff is an "employee" under the FLSA.  Only if one is an "employee" is one entitled to overtime compensation for hours in excess of forty per week.  29 U.S.C. § 207.

Plaintiff moves for partial summary judgment, asking the Court to determine, as a matter of law, that he was Defendant's "employee" and that Defendant was Plaintiff's "employer" under the FLSA.  [Doc. No. 26, p. 1]  Defendant moves for summary judgment based on the same issues, claiming that Plaintiff was a volunteer—and not an "employee"—while serving as President of Council 18 and therefore not entitled to the FLSA's overtime protection.  [Doc. No. 28, pp. 1-4]

The FLSA includes definitions of "employer," "employee," and "employ."  29 U.S.C. § 203 (d), (e), (g):

> (d)  "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

> (e)  "[E]mployee" means any individual employed by an employer.
>        [with exclusions not pertinent to this case]

> (g)  "Employ" includes to suffer or permit to work.

Under conditions set forth by the FLSA, an "employee" may be entitled to overtime compensation for hours in excess of forty per week, at one and one-half times the regular rate at which he is "employed."  29 U.S.C. § 207.  The additional conditions applicable to this case require that, either:  the employee is "engaged in commerce or in the production of goods for commerce" ("individual coverage"), or the employee "is employed in an enterprise engaged in

4

commerce or in the production of goods for commerce" ("enterprise coverage").  29 U.S.C. § 207(a).

Council 18—as a labor organization—is not excluded from coverage under the FLSA by the definition of "employer" in 29 U.S.C. § 203(d).  Instead, this definition explicitly recognizes that a labor organization may act as an employer under some circumstances.  [*See* Doc. No. 29-5, sec. 10c04 (Dep't of Labor Field Operations Handbook (10/29/93) ("The qualifying phrase, 'other than when acting as an employer', indicates observance of the FLSA with respect to any individuals directly employed by it, whether or not such individuals are members of the organization, and even though they are elected to their positions by the entire membership.")] Council 18 states that it did directly employ several full-time employees, but maintains that Plaintiff was not one of them.  [Doc. No. 27-1, p. 3]

As part of his claim that he is entitled to overtime, Plaintiff bears "'the initial burden of proving that an employer-employee relationship exists and that the activities in question constitute employment for purposes of the Act.'" *Purdham v. Fairfax County School Bd.*, 637 F.3d 421, 427 (4th Cir. 2011) (quoting *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999)).

Whether Plaintiff was an "employee" is a question of law for the Court.  *Dole v. Snell*, 875 F.2d 802, 805 (10th Cir. 1989).

The Court believes that the critical point in determining whether Plaintiff was an "employee" or a volunteer is the characterization of the payments made by Council 18 to Plaintiff.  Plaintiff argues that he was paid "wages" for hours "worked" as President of Council 18.  Defendant argues that the payments were reimbursement for "lost time" during which

Plaintiff would have worked and been paid by his full-time employer (the Water Authority), if Plaintiff were not on leave performing his duties as Council 18 President during those hours.

Plaintiff alleges that he "worked a staggering number of hours" and "received no overtime premium for hours worked over 40 in any workweek." [Doc. No. 26, pp. 1-2] Plaintiff alleges that in the years 2009 and 2010, Council 18 paid him almost $65,000. [Doc. No. 26, p. 2] Plaintiff alleges that he was an "employee" under the FLSA and not a volunteer, because "one cannot be a volunteer where one receives payment for services rendered, particularly where the person paying for those services exercises substantial control over the conduct of the person rendering the service." [Doc. No. 26, p. 2] By analogy to the FLSA definition of a "volunteer" who performs services for a "public agency" (which is not applicable here, since Council 18 is not a "public agency"), Plaintiff argues that he received "compensation," but a "volunteer" may only receive "expenses, reasonable benefits, or a nominal fee." 29 C.F.R. § 203(e)(4)(A).

Council 18 argues that Plaintiff was a volunteer while serving as Council 18's President. [Doc. No. 28, pp. 11-13] Plaintiff "volunteered his time to further the primary goals of a non-profit organization." [Doc. No. 28, p. 12] As a full-time employee with the Water Authority, Plaintiff was not dependent on reimbursements received from Council 18 and Plaintiff could resume full-time employment with the Water Authority at any time (as he did after his expulsion). [*Id.*] Council 18 states that Plaintiff received payments from Council 18 only as reimbursement for "lost time"—a "policy designed to relieve, in some measure, the difficulties created by volunteerism." [*Id.*]

Plaintiff performed some of his duties as President of Council 18 during his regular hours for his full-time job at the Water Authority; for these hours, the AFSCME Financial Standards Code provided for "lost time payments" to Plaintiff at $25.04 per hour. [Doc. No. 26, UMF #2;

6

Doc. No. 27, p. 4]  The Financial Standards Code provides that these payments are made when employees take "uncompensated leave from their job to perform union duties"; payments are required "to be supported by adequate records showing . . . that the individual suffered a loss of income that is being made up by the affiliate as lost time."  [Doc. No. 27, p. 4 (emphasis added)]  In order to receive payment from Council 18, Plaintiff submitted a "Lost Time and Mileage Request Sheet"; an example is provided as an exhibit.  [Doc. No. 28-1, pp. 14-15]  This form states:  "Requesting Lost Time, Please Provide the Following" and provides a box in which Plaintiff inserted the "Number of Lost Time Hours."  [Doc. No. 28-1, p. 14]  On this form, Plaintiff claimed 32.0 "lost Time Hours," attaching verification showing that Plaintiff spent 32.0 hours as Council 18 President during regular working hours for his full-time job.  [Doc. No. 28-1, p. 15]

The FLSA definitions governing employment status are given an "expansive interpretation" by the courts in order to effectuate the broad remedial purposes of the Act.  *Snell*, 875 F.2d at 804.  The FLSA "'must not be interpreted or applied in a narrow, grudging manner.'"  *Purdham*, 637 F.3d at 427 (quoting *Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)).  The Supreme Court recognized that although the statutory definition of employee is "exceedingly broad," it "does have its limits."  *Tony & Susan Alamo Found. v. Secretary of Labor*, 471 U.S. 290, 293 (1985) (hereinafter "*Alamo*"); *see Johns v. Stewart*, 57 F.3d 1544, 1557 (10th Cir. 1995) (observing that some persons who are "suffer[ed] or permit[ted] to work" still do not qualify as "employees" under FLSA).  One of those limits was set forth in *Alamo*:  a worker who is a volunteer is not an "employee" under the FLSA.  As the Supreme Court stated in *Alamo*:  "An individual who, 'without promise or expectation of compensation, but solely for his personal purpose or pleasure, worked in activities carried on by

7

other persons either for their pleasure or profit,' is <u>outside the sweep of the Act</u>."  *Alamo*, 471 U.S. at 295 (quoting *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947)) (emphasis added).

The Tony and Susan Alamo Foundation was a nonprofit religious organization; its purposes included establishing an Evangelistic Church, ministering to the sick and needy, and generally doing "those things needful for the promotion of Christian faith, virtue, and charity." *Id.* at 292.  The Foundation obtained income largely from operating a number of commercial businesses, including service stations, retail clothing and grocery outlets, hog farms, construction companies, a motel, and candy companies.  *Id.*  These businesses were staffed mainly by the Foundation's "associates," most of whom were "drug addicts, derelicts, or criminals before their conversion and rehabilitation by the Foundation."  *Id.*  These associates did not receive cash salaries, but were provided by the Foundation with food, clothing, shelter, and other benefits.  *Id.*

The Secretary of Labor filed an action alleging that the Foundation violated the minimum wage, overtime, and recordkeeping provisions of the FLSA.  *Id.* at 293.  The Supreme Court in *Alamo* stated that for the Foundation's commercial activities to be subject to the FLSA, two conditions had to be met:  (1) the Foundation's businesses had to constitute "[e]nterprise[s] engaged in commerce or in the production of goods for commerce,"[1] and (2) the associates had to qualify as "employees" within the meaning of the FLSA.  *Id.* at 295.  Although the activities of nonprofit groups are not covered by the FLSA to the extent that they are not conducted for a "common business purpose," the Court affirmed the lower courts' finding that the Foundation's commercial businesses were subject to the FLSA.  *Id.* at 298-99.   Although Foundation

---

[1] As the Supreme Court observed, either "enterprise coverage" or "individual coverage" may subject employment to the FLSA, but the only basis raised in *Alamo* was "enterprise coverage."  *Alamo*, 471 U.S. at 295 n.8.

associates testified that "they considered themselves volunteers who were working only for religious and evangelical reasons," the *Alamo* Court held that "these protestations, however sincere, cannot be dispositive." *Id.* at 293, 301.  The Court held that the "economic reality" test applied to determine whether the associates were "employees" under the FLSA rather than volunteers. *Id.* at 301 (citing *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961)). The associates were "entirely dependent upon the Foundation for long periods, in some cases several years." *Id.*  The district court had found that "the associates must have expected to receive in-kind benefits—and expected them in exchange for their services." *Id.*  It was immaterial that the compensation was received primarily in the form of benefits rather than cash; the benefits were "wages in another form." *Id.*  The Supreme Court affirmed, holding that the associates were "'employees'" within the meaning of the Act because they work in contemplation of compensation." *Id.* at 306, 299-303.

The *Alamo* Court recognized the importance of volunteerism, but stated that "[o]rdinary volunteerism is not threatened" by its interpretation of the FLSA. *Id.* at 302-03.  The Supreme Court thus held that the FLSA does apply to those who expect wages, or compensation, but does not apply to those persons who volunteer; volunteers are "outside the sweep of the Act." *Id.* at 295.

For the "economic reality" test, the *Alamo* Court cited *Goldberg v. Whitaker House Cooperative, Inc.*, 366 U.S. 28, 33 (1961).  In that case, the defendant was a cooperative which paid its members to work at home making knitted, crocheted, and embroidered goods; the members made the goods requested by the cooperative and received the piece rate fixed by the cooperative. *Id.* at 32.  The cooperative hired and fired homeworkers. *Id.* at 33.  The Supreme Court held that, despite the use of a "cooperative" of which the homeworkers were members, the

9

homeworkers were "employees" under the FLSA. *Id.* The homeworkers worked in the same way as they would if they had an individual proprietor as their employer. *Id.* at 32. The way the cooperative was conducted made "the device of the cooperative too transparent to survive the statutory definition of 'employ' and the Regulations governing homework." *Id.* at 33. "In short, if the 'economic reality' rather than 'technical concepts' is to be the test of employment, these homeworkers are employees." *Id.* (internal citations omitted). This brief opinion describes the approach condoned by the *Alamo* Court.

The *Alamo* and *Whitaker House Cooperative* opinions show that the Court should take a commonsense and non-technical approach to the issue of whether Plaintiff is an "employee" or a volunteer. The record before this Court demonstrates that Plaintiff was a volunteer. Under the "economic reality" test employed by these Supreme Court opinions, Plaintiff was not dependent on Council 18 and did not receive "wages"; instead, the agreement was that Council 18 would reimburse Plaintiff for wages he lost when he took uncompensated leave from his full-time Water Authority job. Services performed for Council 18 were not like a second job, entitling Plaintiff to earn additional wages on top of his full-time wages from the Water Authority. Instead, the record shows that the basis for Council 18's payments to Plaintiff was the provision set forth in the AFSCME Financial Standards Code: "Lost Time Payments" are "payments made to officers or members as compensation for taking <u>uncompensated</u> leave from their job to perform union duties." [Doc. No. 26-5, p. 4 (emphasis added)] Such payments must be verified to show that "the individual <u>suffered a loss of income</u> that is being made up by the affiliate as lost time." [*Id.* (emphasis added)] Both parties agree that this provision is the basis for the payments; indeed, it was Plaintiff who provided the Financial Standards Code to the Court. Given the undisputed source of the payments from Council 18, Plaintiff could not have expected

to receive wages from Council 18, for time for which he was also paid by the Water Authority. Unlike the associates in *Alamo*, Plaintiff was not "working" for wages in performing his activities as President of Council 18.

Plaintiff asserts, however, that he expected to receive "wages" or "compensation" from Council 18 and did not intend to volunteer. But the determination of whether he was a volunteer or an employee is a question of law, based on the objective facts under the totality of the circumstances. *See Snell*, 875 F.2d at 805; *Purdham v. Fairfax County Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011) (considering similar issues under provision excluding as "employee" a volunteer for a "public agency," 29 U.S.C. § 203(e)(4)(A)). The subjective statement by Plaintiff does not control.

In *Purdham*, the plaintiff asserted that he did not intend to volunteer as a golf coach and should not therefore be classified as a volunteer. *Purdham*, 637 F.3d at 428. The Fourth Circuit stated that his subjective intention did not control and, viewing the circumstances objectively, concluded that he was a volunteer, observing that "this case presents a classic example of an individual who is motivated, in significant part, by humanitarian and charitable instincts." *Id.* at 429. Purdham was not coerced or pressured into becoming a golf coach and was free to give up that position at any time. *Id.* at 428-29. The same applies to Plaintiff, who freely ran for election and could have left his position as President of Council 18 at any time. The *Purdham* court stated that it was also relevant to the objective, totality-of-the-circumstances approach that other coaches considered themselves volunteers. *Id.* at 429. In Plaintiff's case, his successor as President of Council 18 declared that he considered himself as a volunteer and not an "employee." [Doc. No.34-1, pp. 1, 3] As another court observed, Congress did not intend the FLSA to discourage volunteer activities undertaken for civic, charitable, or humanitarian

11

purposes; "a commonsense approach . . . suggests that anyone who performs public services without the expectation of compensation . . . is volunteering for civic, charitable and/or humanitarian reasons." *Cleveland v. City of Elmendorf*, 388 F.3d 522, 528-29, 527 (5th Cir. 2004) (considering similar issues under "public agency" provision, and explicitly interpreting that provision in light of *Alamo* opinion). As another court put it, if a plaintiff's subjective intention controlled, "volunteers could wish themselves into a paying job"; in addition, the court applied a standard of reasonableness in holding that the plaintiff was a volunteer. *Brown v. New York City Dep't of Educ.*, 2012 WL 6186496, *6 (S.D. N.Y. 2012) (unpublished). And, of course, the *Alamo* opinion is relevant to show that subjective intention does not control; the Supreme Court in *Alamo* found that under the economic reality test the associates were employees—despite strong testimony from those associates that they considered themselves volunteers.

The basis for the payments from Council 18—the AFSCME Financial Standards Code—clearly shows that those payments are not "wages" to be received on top of Plaintiff's salary from the Water Authority, but are instead to make up for wages Plaintiff lost when he took uncompensated leave from that Water Authority job. Plaintiff thus could not reasonably have expected to receive "wages" rather than "reimbursement" from Council 18. Instead, Plaintiff was volunteering his time to further the goals of a non-profit organization, the union. The Court concludes, as a matter of law, that Plaintiff was a volunteer and not an "employee" of Council 18.

This conclusion is not undermined by Plaintiff's assertions that others made claims for "lost time payments" when they did not suffer a loss of income from another job. Plaintiff cites testimony by Ernesto Padilla that Ernesto received "lost time" payment from Council 18 on the

same day that he was on paid administrative leave from his job. [Doc. No. 26-7, p. 2] Plaintiff also cites testimony by Council 18's office manager that the "lost time" payment forms were used to pay wages to a part-time employee, the high school daughter of an employee. [Doc. No. 26-1, p. 14] The issue before the Court is whether, based on the AFSCME Financial Standards Code—which Plaintiff agrees constitutes the basis for his payments from Council 18—Plaintiff could reasonably expect to receive wages for Council 18 time on top of his wages from the Water Authority. As the Court has concluded, Plaintiff could not.

The economic reality test, as illustrated in the Supreme Court opinions of *Alamo* and *Whitaker House Cooperative*, is simple and straightforward. Although the Court believes that these versions of the test are sufficient to support the Court's conclusion that Plaintiff was a volunteer, the Court will proceed to consider more detailed versions of the economic reality test set forth by the Tenth Circuit—even though the Court concludes that many factors of these tests are not relevant or helpful in distinguishing a volunteer from an "employee."

More detailed versions of the economic reality test have been set forth, to distinguish an "employee" from an independent contractor. *Snell*, 875 F.2d at 804-05; *Johns*, 57 F.3d at 1557-58. "The 'economic realities' test seeks to look past technical, common-law concepts of the master and servant relationship to determine whether, as a matter of economic reality, a worker is dependent on a given employer." *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 506-07 (10th Cir. 2012). The economic reality test is a "helpful analytical guide," not "rigid criteria to be mechanically applied." *Johns*, 57 F.3d at 1559 n.21. No factor in isolation is dispositive; the test is based upon a totality of the circumstances. *Snell*, 875 F.2d at 805. Different cases suggest somewhat different lists of factors, including the following: (1) the degree of control exerted by the alleged employer over the worker; (2) whether the alleged employer has the power to hire

13

and fire workers; (3) whether the alleged employer supervises and controls employee work schedules or conditions of employment; (4) whether the alleged employer determines the rate and method of payment; (5) whether the alleged employer maintains employment records; (6) whether workers accrue sick or annual leave; (7) whether the activity is a less than full-time occupation; (8) the worker's opportunity for profit or loss; (9) the worker's investment in the business; (10) the permanence of the working relationship; (11) the degree of skill required to perform the work; (12) the extent to which the work is an integral part of the alleged employer's business. *Barlow*, 703 F.3d at 506; *Snell*, 875 F.2d at 805; *Alamo*, 471 U.S. at 303 n.25. Some of the factors above are more suited to distinguishing an employee from an independent contractor, as that was the issue in *Barlow* and *Snell*.

The Tenth Circuit stated that the "'existence and degree of each factor is a question of fact while the legal conclusion to be drawn from those facts—whether workers are employees or independent contractors—is a question of law.'"  *Snell*, 875 F.2d at 805 (quoting *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1059 (2d Cir. 1988)) (internal quotation marks omitted). The district court's findings on the underlying factors are reviewed for clear error; review of the ultimate question of employment status is de novo.  *Id.*

The first three factors listed above generally indicate that Plaintiff was a volunteer. Plaintiff argues that his "job duties were controlled by Council 18's Constitution and bylaws, including requirements that he preside at conventions, report to members, sign checks, serve as a convention delegate, and review financial reports."  [Doc. No. 26, p. 14]  Plaintiff's undisputed material fact #6 sets forth additional duties.  [Doc. No. 26, p. 3]  But what is not shown is that Council 18 had any significant degree of control over how Plaintiff performed these duties or how much time he spent on each duty and in toto.  The affidavit of Stephen Perkins, Plaintiff's

successor as President of Council 18, states that he generally accomplished the duties as President in an average of only three to four hours a week. [Doc. No. 34-1, p. 5] The fact that Plaintiff Padilla claims overtime, alleging that he spent more than forty hours per week, indicates a substantial amount of freedom for the president to determine what to do and how much time to spend on it—rather than any significant degree of control by Council 18. This difference also suggests that Council 18 did not significantly control Plaintiff's work schedule, since Council 18 did not control the number of hours worked. Council 18 did not hire or fire Plaintiff; he was elected and could only be removed or impeached pursuant to AFSCME International Constitution. [Doc. No. 28, p. 5 (UMF #3)] Council 18's Constitution only provided for removal of the president for repeated non-attendance at meetings. [*Id.*]

The fourth and fifth factors—whether the alleged employer determined the rate and method of payment, and whether the alleged employer maintains employment records—do not appear to be significant in this case. These factors apply more to distinguishing an independent contractor from an employee.

The sixth factor—whether workers accrue sick or annual leave—suggests that Plaintiff was not an employee. Council 18's Response asserted in "Additional Fact #4" that "Council 18 employees receive health and retirement benefits," but Plaintiff did not. [Doc. No. 27, p. 8] Plaintiff disputed part of "Additional Fact #4," but not these factual assertions. [Doc. No. 29, p. 2]

The seventh factor—whether the activity is a less than full-time occupation—suggests that Plaintiff was not an employee. Although Plaintiff alleged that he spent more than forty hours in some weeks performing his duties as President of Council 18, Plaintiff continued to hold his full-time job for the Water Authority. [Doc. No. 26, pp. 2-3; Doc. No. 27, p. 5] An

15

additional suggestion that President of Council 18 is a less than full-time occupation is provided by the affidavit of Perkins, who stated that he generally spent an average of three to four hours per week as President of Council 18 although occasionally more time was required.   [Doc. No. 34-1, p. 5]   The Court recognizes that the amount of time Plaintiff spent on his duties as President is disputed, and does not make a finding on this point.   [Doc. No. 27-1, p. 3 (Custard affidavit asserting that review of "nearly all" of Plaintiff's "lost time" payment requests shows few if any claims for more than forty hours in a given work week]   Rather, the Court finds only that it is not established that President of Council 18 is a full-time occupation; at any event, the Court places little weight on this factor.

The eighth and ninth factors—the worker's opportunity for profit or loss, and the worker's investment in the business—are relevant when distinguishing an independent contractor from an employee.   Plaintiff notes that he did not invest financially in Council 18 and did not stand to make or lose money.   [Doc. No. 26, p. 15]   These factors, however, are not relevant to distinguishing between an employee and a volunteer; neither a volunteer nor an employee would be expected to experience a profit or loss or to invest in the business.

The tenth factor—the permanence of the working relationship—is again more relevant to the question of whether a worker is an independent contractor.   Plaintiff asserts that the "permanence of Padilla's relationship with Council 18 was high," and that he held the position of President for about three years.   [Doc. No. 26, p. 15]   To the extent that the tenth factor is relevant in determining whether Plaintiff is a volunteer, however, there is a slight suggestion that the position as President of Council 18 is not permanent enough to be significant; the President is elected for only a two-year term.   [Doc. No. 26-4, p. 2, Section 1(a); Doc. No. 31, p. 6]   The

16

Court does not believe that a two-year term is significantly long when compared to the length of a worker's career.

The eleventh factor—the degree of skill required to perform the work—is once again more relevant to the question of independent contractors than volunteers. Plaintiff modestly asserts that he "brought to the position no particularized degree of skill." [Doc. No. 26, p. 15] The Court does not believe that this factor is relevant or significant in Plaintiff's case.

The twelfth factor is the extent to which the work is an integral part of the alleged employer's business. Plaintiff asserts that his duties as President were "integral to Council 18's operation." [Doc. No. 26, p. 15] The Court concludes, however, that this factor is again largely irrelevant to the determination of whether a worker is a volunteer or employee.

As discussed above, the Court concludes that some of these factors are largely irrelevant to the issue in this case. Referring to lists of factors similar to those above, courts caution against mechanical or rigid application of the test. "Courts have repeatedly emphasized that this list is neither definitive nor exclusive." *Todaro v. Township of Union*, 27 F. Supp. 2d 517, 534 (D. N.J. 1998) (referring to a six-factor economic reality test, similar to that set forth above). As the Tenth Circuit emphasized, what is important is to "focus upon the circumstances of the whole activity, with the ultimate criterion being the economic reality of the relationship." *Johns*, 57 F.3d at 1558 (internal quotation marks and citations omitted). "It is well established that no one of these factors in isolation is dispositive; rather the test is based upon a totality of the circumstances." *Snell*, 875 F.2d at 805.

The most relevant of these twelve factors are the first, second, third, and seventh factors discussed above. The Court concludes that consideration of these additional "economic reality test" factors—to the extent they are relevant—supports the Court's conclusion, as a matter of

law, that Plaintiff is a volunteer rather than an employee.  *See Snell*, 875 F.2d at 805 (existence and degree of each factor is question of fact; legal conclusion is question of law).

Other courts have recognized that the economic reality test—as it is formulated in many cases including *Snell* and *Johns*—is designed to distinguish an employee from an independent contractor and is not particularly well suited to distinguishing an employee from a volunteer. *Purdham*, 637 F.3d at 433; *Krause v. Cherry Hill Fire District 13*, 969 F. Supp. 270, 274-75 (D. N.J. 1997); *Rodriguez v. Township of Holiday Lakes*, 866 F. Supp. 1012, 1020 (S.D. Tex. 1994). As these courts did, this Court has focused on the factors which were most relevant and most important to the distinction between a volunteer and an employee, while keeping in mind the economic reality of the whole activity.  Ultimately, the Court concludes that the most critical points in this case are those made by the Supreme Court in *Alamo*:  (1) whether Plaintiff was motivated by reasons apart from personal profit—whether public service, charitable, humanitarian, or religious; and (2) whether Plaintiff acted without promise or expectation of compensation.  *Alamo*, 471 U.S. at 295.

With regard to the first point, the Court agrees with the Fifth Circuit's approach; a common-sense approach "suggests that anyone who performs public services without the expectation of compensation, and with no tangible benefits for himself, is volunteering for civic, charitable and/or humanitarian reasons."  *Cleveland*, 388 F.3d at 528-29.  With regard to the second point, and keeping in mind that the "ultimate criterion" is "the economic reality of the relationship," the Court concludes that the undisputed basis of the payments made to Plaintiff by Council 18 demonstrates that Plaintiff acted without promise or expectation of compensation. *Johns*, 57 F.3d at 1558.

18

The Court concludes, as a matter of law, that Plaintiff was a volunteer and not an "employee" when serving as President of Council 18.

## II.  The New Mexico Minimum Wage Act (NMMWA)

As background only, the Court notes that Council 18 presented a copy of a Decision from the Labor Law Administrator, N.M. DWS/Labor & Industrial Division, holding that Plaintiff was not an "employee" under Section 50-4-21(C) of the New Mexico Minimum Wage Act.  [Doc. No. 27-2, p. 1]

Both parties move for summary judgment under the NMMWA on the same bases as under the FLSA, Plaintiff again moving for partial summary judgment. The relevant provisions of the NMMWA are similar to those of the FLSA.  Section 50-4-22(D) of the NMMWA provides that an "employee" must be paid one and one-half times the employee's regular hourly rate for hours worked in excess of forty in a week.  Section 50-4-21(C)(4) of the NMMWA defines "employee" as:  "an individual engaged in the activities of an educational, charitable, religious or nonprofit organization where the employer-employee relationship does not, in fact, exist or where the services rendered to such organizations are on a voluntary basis."

Neither party presents a different argument under the NMMWA; both parties agree that the same legal analysis applies in both cases.  [Doc. No. 27, pp. 16-17; Doc. No. 29, p. 5]  The Court need not consider this issue further, and concludes that Plaintiff is not an "employee" under the NMMWA.  The Court denies Plaintiff's motion for partial summary judgment and grants Defendant's motion for summary judgment under the NMMWA.

## CONCLUSION

Plaintiff cannot prevail on his claim for overtime because he was a volunteer and not an "employee."  **IT IS THEREFORE ORDERED** that *Plaintiff's Motion and Memorandum in Support of Partial Summary Judgment* [Doc. No. 26, filed June 11, 2012] is **DENIED.  IT IS FURTHER ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. No. 28, filed June 29, 2012] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.


_____
UNITED STATES DISTRICT JUDGE